UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 02-60768-CIV-MARRA

PETER CASTAGNA,

    Plaintiff,

Magistrate Judge Seltzer

vs.

DANIEL BRITO and PAUL WILLIAMS,

    Defendants.

_____/

FILED by _____ D.C.

JUN 1 6 2003

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Defendants' Motion for Summary Judgment [DE 31] and Defendants' Motion to Strike Affidavit of Dr. Lubomir Lacho [DE 46]. The Court has carefully considered the motions and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiff's Amended Complaint alleges claims for unlawful arrest[1] and excessive use of force resulting from an incident at his home. Defendants, two Town of Davie police officers, responded to Plaintiff's home as a result of a 911 call from Plaintiff's fiancé. The undisputed facts indicate that Plaintiff's fiancé, Susan Johnson, arrived at Plaintiff's house and found him non-responsive and lying naked on the floor near his bed. She called 911 to request an ambulance. Deposition of Susan Johnson at p. 47 [DE 35] (hereinafter, "Johnson"). The police dispatcher told the officers that there was a gun near Plaintiff and pills in the room, but it was unknown whether he had been shot. Daniel Brito Deposition at p. 14 [DE 39] (hereinafter,

---

[1] Although Plaintiff alleges an unlawful arrest, the record evidence demonstrates that Plaintiff, in fact, is asserting an unlawful seizure of his person by Defendants for the purpose of having Plaintiff evaluated for an involuntary commitment under Florida's Baker Act. See Fla. Stat. § 394.463.

"Brito"); Paul Williams Deposition at 13 [DE 40] (hereinafter, "Williams").

Upon arriving at the scene, Officer Williams testified that Susan Johnson told him that she found Plaintiff lying face down in bedroom with a gun by his side, that he was depressed for last three weeks, and possibly had overdosed on Vicodin and Soma. Williams at p. 14. Susan Johnson disputes saying that Plaintiff was "severely depressed" and that Plaintiff was "taking" Vicodin and Soma. Johnson at 71. However, she testified that she did say that Plaintiff was "a little down" and that she told the officer that Plaintiff *had* those drugs in the house. Id.

Numerous witnesses reported that the ambulance arrived moments after the police arrived. About one to two minutes after arriving, Officer Williams entered the open back door of Plaintiff's trailer home. Based upon Susan Johnson's statement to him, Officer Williams believed that there was a possible suicide attempt in progress. Williams at 14-17; Brito at 15. Williams saw Plaintiff lying face down on the floor and yelled to him. Williams at 18. After receiving no response, he entered the bedroom, saw a gun, and proceeded to handcuff Plaintiff. Id. at 19. Brito also testified that he saw a gun and pill bottles, and believed Plaintiff had attempted suicide. Brito at 16.[2] According to Officer Brito, Plaintiff was raised to a sitting position and then handcuffed for officer safety reasons. Brito at 19. Plaintiff testified that he kept the pellet gun out on his dresser in his bedroom. Peter Castagna deposition at 42 [DE 35] (hereinafter, "Plaintiff").

Williams observed that Plaintiff had his eyes open, was awake, breathing, and unable to move without assistance. Williams at 22. Plaintiff testified that he had fallen in the morning and

---

[2] After Plaintiff was handcuffed, but before Plaintiff was moved, Officer Williams retrieved the gun and determined it was a pellet gun.

2

could not get up. He heard Susan Johnson call the police from his house, and heard the police at his door. Plaintiff at 47-48. The paramedic on the scene, William LeCount, submitted an affidavit in which he states that the police gave him clearance to enter five minutes after he arrived on scene. LeCount affidavit at ¶ 3 [DE 34]. By examining Plaintiff and speaking with Susan Johnson, LeCount concluded that Plaintiff had possibly overdosed. Id. at ¶¶4-5.

As to the critical facts regarding the use of force, the police had the paramedic wait with the stretcher right at the door of Plaintiff's trailer home. Plaintiff testified that "I was wobbly and then they dragged me down." Plaintiff at 49. Susan Johnson testified that Plaintiff told her that he had been "dropped" several time by the police officers. Plaintiff's Amended Complaint made similar allegations. Plaintiff's affidavit, filed along with his opposition to Defendant's motion for summary judgment, also states that Plaintiff was "dropped" to the floor. Affidavit of Peter Castagna, ¶ 7 [DE 44]. In his deposition, Plaintiff also testified that the police "threw me outside" half onto a stretcher and half onto the ground. Plaintiff at 52. In his affidavit, Plaintiff states that the police "threw me outside of the door to my house onto a stretcher." Plaintiff's affidavit at ¶ 8.

There were two neighbors who witnessed some of the incident.[3] Neither saw Plaintiff dropped. Sue Cybert testified that she could not see the back door of the house. Cybert deposition at 19 [DE 35] ("Cybert"). Plaintiff was wheeled around the house on the gurney in handcuffs. The stretcher that the Plaintiff was on was at an angle, with Plaintiff's head a little

---

[3] Susan Johnson, Plaintiff's fiancé, was in the front of the house in a police car and could not see what occurred in the house or at the back entrance to the house where Plaintiff was brought out. Johnson at 56. When Plaintiff was wheeled around the corner toward the front of the house and the ambulance, Plaintiff was on the gurney with a sheet over him but the sheet was creeping up his legs. Id. at 59.

3

higher. Plaintiff kept falling from one side to another. Id. at 22-26. The paramedics were a little rough with him to keep him on the stretcher. Id. at 27. Cypert never saw Plaintiff naked. Id. at 23.

Neighbor Deidra Christian was able to see into the back of Plaintiff's trailer house. Deposition of Deidra Christian at 29 [DE 35] (hereinafter, "Christian"). She saw Plaintiff sitting on the floor inside his house with his back to the wall, handcuffed and naked. Id. at 31-33. He was not responsive and was staring straight ahead, dazed, with open eyes. Id. at 37-39. The police directed her back into her house. Id. at 40-41. After three to five minutes, she looked out again and they were wheeling Plaintiff to the ambulance while he was handcuffed, lying on the gurney, and covered by a sheet. Id. at 43. She understood that the police told her to go inside because Plaintiff was naked and they were going to bring him out. Id. at 54.

Plaintiff was taken by ambulance to a regular emergency room, where he was admitted to the hospital due to a stroke. Plaintiff was hospitalized for six weeks and then released. He was never given an involuntary medical exam under the Baker Act. Defendant Brito did complete paperwork initiating a Baker Act arrest.

Plaintiff did not suffer any physical injuries as a result of the Defendants' actions. Plaintiff did not break any bones, nor suffer any cuts or bruises. Plaintiff at 63. Plaintiff does present evidence that he suffers emotional distress and post-traumatic stress disorder. See Deposition and Affidavit of Dr. Lubomir Lacho [DE's 43 and 51].

## II. DISCUSSION

### A. Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to

4

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323(1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477

5

U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

### B. Section 1983 Claims

"As in any action under § 1983, the first step is to identify the exact contours of the underlying right said to have been violated." County of Sacramento v. Lewis, 523 U.S. 833 (1998); See Graham v. Connor, 490 U.S. 386 (1986). To be successful in a Section 1983 action a party must show that: 1) a party deprived him of a right "secured by the constitution and the laws" of the United States; and 2) the party must establish that defendant acted "under color of any statute ordinance, regulation, custom or usage of any state." Gilbert v. Sears, Roebuck and Company, 899 F.Supp. 597, 599 (M.D. Fla. 1995), *quoting* 42 U.S. § 1983. These two threshold issues have been met in this case. Plaintiff's claims against the Defendants are under the Fourth and Fourteenth Amendments for unlawful arrest and for excessive force. Defendants were acting under color of state law as police officers.

### 1. Qualified Immunity

The doctrine of qualified immunity shields a Section 1983 defendant from liability for harm arising under discretionary acts, as long as the discretionary acts do not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). For an asserted right to be clearly established for purposes of qualified immunity, "the salient question . . . is whether the state of

6

the law [in 1999] gave respondents fair warning that their alleged treatment of [Plaintiff] was unconstitutional." Hope v. Pelzer, 536 U.S. 730, 741 (2002).

### (a) False Arrest

To enjoy qualified immunity, Defendants need only have arguable probable cause to support their seizure of Plaintiff's person. The standard for arguable probable cause is "whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law." Gold v. City of Miami, 121 F.3d 1442, 1445 (11th Cir. 1997).[4] "As the Supreme Court has stated, '[t]he qualified immunity standard 'gives ample room for mistaken judgment.'" Id. at 1446; See Hunter v. Bryant, 502 U.S. 224, 229 (1991). "This accommodation exists because 'officials should not err always on the side of caution' because they fear being sued." Gold, 121 F.3d at 1446.

In this case, a reasonable officer in the same circumstances as Defendants would have concluded that probable cause existed to take Plaintiff into custody for the purpose of initiating involuntary commitment proceedings under Florida law in order for him to receive necessary medical and psychiatric care. Defendants reasonably believed that Plaintiff had attempted suicide. There is no dispute that there was a gun near where Plaintiff was lying on his bedroom floor. These facts alone support the grant of qualified immunity to Defendants in handcuffing Plaintiff, both to protect the officers and to protect Plaintiff from himself. This type of on the

---

[4] If qualified immunity is not present, then probable cause exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed...an offense." Williamson v. Mills, 65 F.3d 155, 158 (11th Cir. 1995).

scene split second decision to restrain a person who appears awake and not responding, who is also within the reach of a gun and pill bottles, is the type of decision for which police officers should not fear being sued. The fact that Defendants discovered shortly thereafter that the gun was only a pellet gun did not diminish the reasonableness of their actions at the time they were taken.

Plaintiff's age was an additional factor which justified Defendants' decision to restrain Plaintiff and seek to commit him involuntarily for attempted suicide. Plaintiff was 38 or 39 at the time, and Defendants could reasonably have concluded that Plaintiff was more likely attempting suicide than suffering a stroke. Even the neighbors testified that Plaintiff was awake but non-responsive when they were close enough to otherwise communicate with him. Christian at 31; Cypert at 33.

In support of his false arrest claim, Plaintiff argues that Defendants' actions were inconsistent with the criteria set forth in the Baker Act. The Act permits an involuntary examination if "it is not apparent that such harm [to the subject of the commitment resulting from a lack of treatment or care] may be avoided through the help of willing family members or friends or the provision of other services." Fla. Stat. § 394.463(1)(b)(1) (2002).[5] Applying this criteria to the facts of this case, it is clear that leaving Plaintiff in the care of Plaintiff's friend, Susan Johnson, was not a viable option for Defendants. Susan Johnson called 911 because she could not care for Plaintiff. Thus, professional medical or psychiatric assistance was required.

---

[5] "Without care or treatment, the person is likely to suffer from neglect or refuse to care for himself or herself; such neglect or refusal poses a real and present threat of substantial harm to his or her well-being; and it is not apparent that such harm may be avoided through the help of willing family members or friends or the provision of other services." Fla. Stat. § 394.463(1)(b)(1) (2002).

Though Johnson states in her affidavit that she was willing to help Plaintiff avoid harm by allowing the paramedics to take Plaintiff to the hospital without handcuffs, the police officers' decision to handcuff Plaintiff was necessary to protect him, themselves and others with whom Plaintiff would come into contact. Affidavit of Susan Johnson, ¶ 8 [DE 45].

It is important to note that the proper meaning of "harm [to] be avoided" in the Baker Act is harm to Plaintiff's well-being from not receiving care, not harm caused by the handcuffing of Plaintiff. Under the circumstances presented to the Defendants, Plaintiff required immediate emergency medical or psychiatric care. Defendants sent Plaintiff with the paramedics to the regular emergency room without delay, where he was treated by medical professionals for what later was determined to be a stroke. Plaintiff was never held or processed for psychological examination. In effect, the only "arrest" was that Plaintiff was transported in handcuffs to the hospital.[6] The Court therefore concludes, as a matter of law, that Defendants had arguable probable cause to take Plaintiff into custody for the purpose of receiving a Baker Act evaluation.[7]

---

[6] See the next section for the discussion of whether handcuffing constitutes use of excessive force.

[7] To the extent Plaintiff is arguing that Defendants improperly entered his home to execute an arrest, the Court rejects this argument. The officers opened Plaintiff's unlocked back door and yelled to Plaintiff, who they could see lying face down on the floor. Williams at 18. Only after Plaintiff failed to respond and appeared to need immediate medical assistance, did the officers enter. Upon entering, they saw the gun and pill bottles, concluded that a suicide attempt was in progress, and handcuffed Plaintiff for their own and Plaintiff's protection. Thus, the officers did not violate "[t]he rule of Payton . . .that there is 'a firm line at the entrance to the house,' and absent exigent circumstances 'that threshold may not reasonably be crossed without a warrant.' Payton keeps the officer's body outside the threshold, not his voice." Knight v. Jacobson, 300 F.3d 1272, 1277 (11th Cir. 2002), citing Payton v. New York, 445 U.S. 573, 590 (1980). Exigent circumstances were clearly apparent after the police looked and called into Plaintiff's home.

### (b) Excessive Force

"[A]ll claims that law enforcement officers have used excessive force...in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989). This Court must balance Plaintiff's Fourth Amendment rights with the countervailing governmental interests at stake. Id. at 395. "'Qualified immunity applies unless application of the standard would inevitably lead' a reasonable officer in the defendant's position to conclude that the force was unlawful." Gold v. City of Miami, 121 F.3d 1442, 1446 (11th Cir. 1997). In addition, the Eleventh Circuit has followed the Graham *de minimis* force doctrine. This doctrine holds that "the application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000).

Other factors to be considered "includ[e] the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Lee v. Ferraro, 284 F.3d 1188, 1197-98 (11th Cir. 2002), *citing* Graham, 490 U.S. at 394-98. Another formulation of the factors for qualified immunity against an excessive force claim includes "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, [and] (3) the extent of the injury inflicted. . . ." Slicker v. Jackson, 215 F.3d 1225, 1233 (11th Cir. 2000).

In this case, the only admissible evidence of force[8] is Plaintiff's deposition testimony that

---

[8] Johnson's testimony about what Plaintiff told her is hearsay and is not admissible. Pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, the Court can not consider such inadmissible evidence filed in opposition to a motion for summary judgment. There is no

"I was wobbly and then they dragged me down," and Plaintiff's affidavit, which states that he was "dropped" to the floor. In his deposition, Plaintiff also testified that the police "threw me outside" half onto a stretcher and half onto the ground. Plaintiff at 52. In his affidavit, Plaintiff states that the police "threw me outside of the door to my house onto a stretcher." Plaintiff's affidavit at ¶ 8.

Even assuming Plaintiff's characterization of Defendants acts is accurate ("dragged," "dropped," "threw"), under the circumstances of the case, Defendants' actions were not violative of Plaintiff's rights. Defendants were presented with an unstable individual who appeared to be suffering from a drug overdose, but in fact was experiencing a stroke, Defendants used the force necessary to get Plaintiff from the bedroom to the paramedic's stretcher and gurney. Plaintiff did not suffer any physical injuries.[9] While neutral witnesses and physical injuries are not required to oppose a summary judgment motion regarding excessive force, i.e., Plaintiff's own testimony can suffice to defeat a summary judgment motion, there is no evidence that Defendants used anything more than *de minimis* force in this case.[10]

---

evidence that Johnson's statement would qualify as an excited utterance or present sense impression under Rule 803(1) or (2) of the Federal Rules of Evidence. The statement was not made at the scene, but apparently at some point at the hospital.

[9] To the extent Plaintiff argues that he suffered humiliation by being handcuffed naked, the undisputed facts are that no neighbors saw Plaintiff naked when he was being wheeled from the house to the ambulance, and, the police officers took steps to cover Plaintiff before they removed him from the house. In addition, the neighbors knew that something was physically wrong with Plaintiff, and therefore they could not have reasonably assumed that Plaintiff was restrained because he committed a criminal act.

[10] Given the adoption by the Eleventh Circuit in Nolin of the principle of *de minimis* force, a case for excessive force cannot be maintained solely upon the emotional damage suffered by Plaintiff when only *de minimis* force is used. The traditional negligence doctrine that "you take the victim as you find him," can not apply in the qualified immunity situation. Allowing

As to the issue of the use of handcuffs, police officers have discretion to use handcuffs as a restraint. Even where handcuffs cause some physical injury, a fact not present in this case, the simple act of handcuffing someone subsequent to arrest is rarely enough to sustain an excessive force claims. See Rodriguez v. Farrell, 294 F.3d 1276, 1277-78 (11th Cir. 2002). In this case, though it later became clear that Plaintiff was having a stroke and handcuffs may not have been necessary, *at the time* Defendants' handcuffed Plaintiff, they were acting reasonably under all the circumstances known to them. Given the undisputed evidence of a gun and pills within Plaintiff's reach when the officers arrived, together with Plaintiff's appearance as having had a drug overdose, the officers' decision to handcuff was a reasonable one.

The Court concludes the evidence presented demonstrates, as a matter of law, that Defendants used only *de minimus* force in moving Plaintiff from his floor to the paramedics' stretcher and in handcuffing Plaintiff. These types of discretionary decisions, made in the midst of crisis situations, where no physical injuries were caused and *de minimus* force was used, are the ones for which the doctrine of qualified immunity was developed. Officers must be free to respond reasonably to these types of crisis situations without fear of lawsuits.

---

claims to proceed to trial because of hyper-sensitive victims would vitiate the doctrine of qualified immunity. Rather, the focus is on whether the police officer's actions were reasonable based upon what was known to them at the time.

### III. CONCLUSION

The Court concludes that Defendants Brito and Williams were entitled to qualified immunity for their actions toward Plaintiff during the incident in question. Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment [DE 31] is hereby **GRANTED**;

2. The Court will separately enter judgment for defendants.

DONE AND SIGNED in Chambers at Fort Lauderdale, Broward County, Florida, this 16th day of June, 2003.

_____
KENNETH A. MARRA
United States District Judge

Copies furnished to:

Matthew Bavaro, Esq.
Fax: 954-423-9465

Richard McDuff, Esq.
Fax: 954-463-2444